

U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JUN 04 2024

FILED_____RECEIVED_____

To Whom it may concern

I am writing this letter in response to the Debtors objections of claim filed on 5/20/24 in Case # 24-11602-EPK Doc 72. Attached you will find documentation needed to show that our claims are legitimate and need to be repaid in full.

Sincerely
Robert Crabb

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Civil Action No. _____

STEPHEN CRABB, an individual; and
ROBERT CRABB, an individual;

     Plaintiffs,

v.

JONATHAN INGRAM, an individual; and
ASSOCIATES OF BOCA RATON, INC. d/b/a RE/MAX ADVANTAGE PLUS,
a Florida corporation;

     Defendants.

_____/

## COMPLAINT FOR DAMAGES and EQUITABLE RELIEF

Plaintiffs STEPHEN CRABB, an individual; and ROBERT CRABB, an individual (collectively hereafter referred to as "Plaintiffs"), by and through undersigned counsel, hereby sue Defendants JONATHAN INGRAM, an individual; and ASSOCIATES OF BOCA RATON, INC. d/b/a RE/MAX ADVANTAGE PLUS, a Florida corporation ("RE/MAX ADVANTAGE PLUS"), for damages and equitable relief. As grounds therefor, Plaintiffs allege the following:

## PRELIMINARY STATEMENT

1.     This action is brought by Plaintiffs, who invested principal sums of Two Hundred Thousand Dollars ($200,000.00) [STEPHEN CRABB] and One Hundred Thousand Dollars ($100,000.00) [ROBERT CRABB], respectively, with RE/MAX ADVANTAGE PLUS at the behest and upon the solicitations of its President and chief spokesperson INGRAM, who also prepared the paperwork memorializing and surrounding Plaintiffs' investments.

2.     To secure Plaintiffs' confidence and their investment funds, RE/MAX ADVANTAGE PLUS and INGRAM employed a series of false and misleading representations -- all of which resulted in a devastating economic loss to Plaintiffs.

Complaint for Damages and Equitable Relief

3.      Notwithstanding RE/MAX ADVANTAGE PLUS and INGRAM's affirmative representations to Plaintiffs that they would profit handsomely from investing in RE/MAX ADVANTAGE PLUS, RE/MAX ADVANTAGE PLUS and INGRAM misrepresented critical information.

4.      Plaintiffs bring this action to recover from Defendants the lucrative financial assets taken from them under fraudulent pretenses.

## PARTIES, JURISDICTION AND VENUE

### THE PARTIES

#### Plaintiffs

5.      Plaintiff STEPHEN CRABB is an individual domiciled in Norfolk, Virginia and is *sui juris.*

6.      Plaintiff ROBERT CRABB is an individual domiciled in Chester, New Hampshire and is *sui juris.*

7.      Plaintiff ROBERT CRABB is Plaintiff STEPHEN CRABB's father.

#### Defendants

8.      Defendant JONATHAN INGRAM ("INGRAM") is an individual domiciled in Palm Beach County, Florida and is *sui juris.*

9.      Defendant ASSOCIATES OF BOCA RATON, INC. d/b/a RE/MAX ADVANTAGE PLUS is a Florida corporation that has represented to the State of Florida its principal place of business is located at 2560 NW 70th Boulevard, Boca Raton, Florida.

10.     At all times relevant hereto, INGRAM has served as the President, sole owner, and Registered Agent for RE/MAX ADVANTAGE PLUS.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

### Other Liable Persons/Entities

11.     Along with Defendants, there are likely other parties who may be liable to Plaintiffs, but about whom Plaintiffs currently lack specific facts to permit them to name these persons or entities as party defendants.  By not naming such persons or entities at this time, Plaintiffs are not waiving their right to amend this pleading to add such parties, should the facts warrant adding such parties.

### JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorneys' fees; and is an action between citizens of different states.

13.     This Court has personal jurisdiction over the defendants because: (a) at least one of the defendants operates an entity that is present and/or doing business within this jurisdiction, (b) at least one of the defendants resides and works within this jurisdiction, and (c) the defendants' tortious activity occurred within this jurisdiction.

14.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391, as the causes of action alleged herein arose in Palm Beach County, Florida.

### GENERAL FACTUAL ALLEGATIONS

### Stephen Crabb

15.     In or about December 2021, Plaintiff STEPHEN CRABB met INGRAM through a mutual acquaintance of theirs.

16.     At their December 2021 meeting, INGRAM represented to Plaintiff STEPHEN CRABB that he (INGRAM) needed funding to expand his RE/MAX ADVANTAGE PLUS business; and INGRAM thereupon solicited an investment from Plaintiff STEPHEN CRABB.

17.     To induce Plaintiff STEPHEN CRABB's investment and to earn his trust, INGRAM showed Plaintiff STEPHEN CRABB what INGRAM represented were RE/MAX ADVANTAGE

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

PLUS's corporate banking records and assured Plaintiff STEPHEN CRABB that there would be no issue with repayment of any funds invested by Plaintiff STEPHEN CRABB.

18.     To further induce Plaintiff STEPHEN CRABB's investment, INGRAM -- both individually and as a representative of RE/MAX ADVANTAGE PLUS -- promised a premium return of fifty percent (50%) on any funds invested.

19.     INGRAM further represented that he would personally guarantee any debts owed by RE/MAX ADVANTAGE PLUS -- thus providing further comfort and reassurance to Plaintiff STEPHEN CRABB.

20.     On or about December 26, 2021, a Promissory Note and Schedule was executed by and between RE/MAX ADVANTAGE PLUS (as the borrower) and Plaintiff STEPHEN CRABB (as the lender) under which Plaintiff STEPHEN CRABB loaned RE/MAX ADVANTAGE PLUS the principal sum of Two Hundred Thousand Dollars ($200,000.00), which RE/MAX ADVANTAGE PLUS was obligated to repay to Plaintiff STEPHEN CRABB within eighteen (18) months along with One Hundred Thousand Dollars ($100,000.00) interest thereon for a total repayment amount of Three Hundred Thousand Dollars ($300,000.00).

21.     A true and correct copy of the Promissory Note and Schedule (the "December 2021 Note") is attached hereto as **Exhibit "A"**.

22.     The December 2021 Note further provides that the Note is personally secured by INGRAM, who signed the Note in his personal capacity as well as in his capacity as a representative of RE/MAX ADVANTAGE PLUS.

23.     Additionally, the December 2021 Note states, in part:

> If default be made in the payment under this note, and if such default is not made good within 30 days after the due date of such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder(s) of this note.

- 4 -

Complaint for Damages and Equitable Relief

Each person liable hereon in any capacity, whether as maker, endorser, surety, guarantor or otherwise, (i) waves [*sic.*] homestead exemption, (ii) waives presentment, demand, protest, and notice of every kind respecting this note, * * * and (iv) to the extent not prohibited by law, waives the benefit of any law or rule of law intended for his advantage or protection as an obligor hereunder or providing for his release or discharge from liability hereon, in whole or in part, on account of any facts or circumstances other [than] full and complete payment of all amounts due hereunder.

24.     Furthermore, the December 2021 Note provides that "each person liable hereon in any capacity also agrees to pay all fees and charges, and all costs, including reasonable attorney's fees."

25.     In conjunction with the parties' agreement on the terms of the December 2021 Note, INGRAM presented Plaintiff STEPHEN CRABB multiple signed, pre-dated checks from a RE/MAX ADVANTAGE PLUS checking account at SunTrust Bank as outlined in the payment schedule in the Note; and INGRAM instructed Plaintiff STEPHEN CRABB to cash each check monthly in accordance with the Note's payment schedule.

26.     Although Defendants satisfied their payment obligations to Plaintiff STEPHEN CRABB for a limited period of time, Defendants eventually defaulted on their payment obligations.

27.     Plaintiff STEPHEN CRABB made efforts to obtain Defendants' compliance with their payment obligations, but those efforts were met by INGRAM with obstruction and threats of preemptive litigation.

28.     As is his right under the December 2021 Note, Plaintiff STEPHEN CRABB has declared the Note in default and demands payment of the entire principal sum (minus payments already made) and accrued interest.

29.     As of the date of this filing, Plaintiff STEPHEN CRABB is still owed no less than One Hundred Forty Thousand Dollars ($140,000.00) by Defendants.

### Robert Crabb

30.     In or about early- to mid-2022, Plaintiff ROBERT CRABB was introduced to Defendants.

Complaint for Damages and Equitable Relief

31.    Just as with Plaintiff STEPHEN CRABB, Defendants induced Plaintiff ROBERT CRABB to invest funds in RE/MAX ADVANTAGE PLUS as a means of assisting RE/MAX ADVANTAGE PLUS in growing its business.

32.    Also just as with Plaintiff STEPHEN CRABB, Defendants induced Plaintiff ROBERT CRABB's investment and trust by showing him the RE/MAX ADVANTAGE PLUS corporate banking records and assuring Plaintiff ROBERT CRABB that there would be no issue with repayment of any funds he invested.

33.    Likewise, INGRAM represented that he would personally guarantee any debts owed by RE/MAX ADVANTAGE PLUS -- thus providing further comfort and reassurance to Plaintiff ROBERT CRABB.

34.    Additionally, Defendants presented Plaintiff ROBERT CRABB signed, pre-dated checks that he was instructed to cash on specified dates as Defendants' satisfaction of their monthly obligations to pay back Plaintiff ROBERT CRABB his principal investment plus interest in a manner equivalent to the payment agreement between Defendants and Plaintiff STEPHEN CRABB.

35.    After Defendants had satisfied an April 2022 short-term loan with Plaintiff ROBERT CRABB in the principal sum of Seventy Thousand Dollars ($70,000.00) and a June 2022 short-term loan with Plaintiff ROBERT CRABB in the principal sum of Eighty Thousand Dollars ($80,000.00), Plaintiff ROBERT CRABB and Defendants entered into another short-term loan on or about September 26, 2022 in the principal amount of One Hundred Thousand Dollars ($100,000.00) -- pursuant to which Defendants were obligated to return to Plaintiff ROBERT CRABB a total of One Hundred Fifteen Thousand Dollars ($115,000.00).

36.    In conjunction with the parties' agreement on the terms of the September 2022 loan, INGRAM presented Plaintiff ROBERT CRABB a signed check from a RE/MAX ADVANTAGE PLUS checking account at SunTrust Bank in the amount of One Hundred Fifteen Thousand Dollars

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

($115,000.00) that was pre-dated for November 4, 2022; and Plaintiff ROBERT CRABB was instructed to not negotiate the check until on or after November 4, 2022.

37.     Shortly before November 4, 2022, INGRAM reached out to Plaintiff ROBERT CRABB and requested that he not negotiate the $115,000.00 check for at least three months.

38.     Plaintiff ROBERT CRABB complied with Defendants' request; but when the $115,000.00 check was deposited in March 2023, it was rejected by the bank as a result of insufficient funds being in the account on which the check was drawn.

39.     Just as with Plaintiff STEPHEN CRABB, Plaintiff ROBERT CRABB's demand for payment from Defendants was met by INGRAM with obstruction and litigation threats.

40.     As of the date of this filing, Plaintiff ROBERT CRABB is still owed no less than One Hundred Fifteen Thousand Dollars ($115,000.00) by Defendants.

### DEFENDANTS WITHHELD FROM PLAINTIFFS THAT RE/MAX ADVANTAGE PLUS HAD SOLD ITS FUTURE RECEIVABLES TO MULTIPLE THIRD PARTIES IN EARLY 2022

41.     Unbeknownst to Plaintiffs -- and contrary to the representations made to them by RE/MAX ADVANTAGE PLUS and INGRAM -- RE/MAX ADVANTAGE PLUS had sold its future receivables to multiple third-parties in January 2022 and February 2022, which greatly impacted and inhibited the ability and likelihood that Defendants would be able to fulfill their payment obligations to Plaintiffs.

42.     According to information contained in a lawsuit filed in August 2023 by Mr. Advance, LLC, a Florida-based company ("Mr. Advance"), in Palm Beach [FL] Circuit Court - Case No.: 50-2023-CA-013155-XXXX-MB Div: AD:

   (a) On or about January 12, 2022, Mr. Advance and Defendants entered into an agreement whereby Mr. Advance agreed to purchase all rights to RE/MAX ADVANTAGE PLUS's future receivables having an agreed-upon value of $432,290.00;

   (b) Pursuant to the agreement, RE/MAX ADVANTAGE PLUS agreed to have one bank account approved by Mr. Advance (the "Bank Account") from which

Complaint for Damages and Equitable Relief

RE/MAX ADVANTAGE PLUS authorized Mr. Advance to make daily ACH withdrawals until $432,290.00 was fully paid to Mr. Advance;

(c) INGRAM agreed to guarantee any and all amounts owed to Mr. Advance from RE/MAX ADVANTAGE PLUS upon a breach in performance by RE/MAX ADVANTAGE PLUS;

(d) At some point on or about July 7, 2022, RE/MAX ADVANTAGE PLUS stopped making its payments to Mr. Advance, changed the designated Bank Account without Mr. Advance's authorization, and otherwise breached the agreement by impeding and preventing Mr. Advance from making the agreed upon ACH withdrawals from the Bank Account;

(e) As of August 24, 2023, there remained an unpaid balance due and owing to Mr. Advance on the agreement in the amount of $222,343.38, plus interest, costs, disbursements, and attorney's fees.

43.    Similarly, according to information contained in a lawsuit filed in June 2022 by Silverline Services, Inc., a New York-based company ("Silverline"), in the Supreme Court of the State of New York - Kings County, Index No.: 517240/2022:

(a) On or about February 10, 2022, Silverline and Defendants entered into an agreement whereby Silverline agreed to purchase all rights to RE/MAX ADVANTAGE PLUS's future receivables having an agreed-upon value of $333,940.02;

(b) Pursuant to the agreement, RE/MAX ADVANTAGE PLUS agreed to have one bank account approved by Silverline (the "Bank Account") from which RE/MAX ADVANTAGE PLUS authorized Silverline to make daily ACH withdrawals until $333,940.02 was fully paid to Silverline;

(c) INGRAM agreed to guarantee any and all amounts owed to Silverline from RE/MAX ADVANTAGE PLUS upon a breach in performance by RE/MAX ADVANTAGE PLUS;

(d) At some point in or about early- to mid-2022, RE/MAX ADVANTAGE PLUS stopped making its payments to Silverline and otherwise breached the agreement by impeding and preventing Silverline from making the agreed upon ACH withdrawals from the Bank Account;

(e) As of June 15, 2022, there remained an unpaid balance due and owing to Silverline on the agreement in the amount of $158,497.02, plus interest, costs, disbursements, and attorney's fees.

- 8 -

44.    While soliciting Plaintiffs' initial and subsequent investments with RE/MAX ADVANTAGE PLUS, Defendants kept Plaintiffs unaware that RE/MAX ADVANTAGE PLUS's had been sold to multiple third-parties.

45.    Plaintiffs did not learn of the dispute between Defendants and the multiple third-party purchasers of RE/MAX ADVANTAGE PLUS's receivables -- and the apparent early- to mid-2022 breakdown of their professional relationship -- until August 2023, after all of Plaintiffs investments had already been made.

46.    Had Plaintiffs been aware RE/MAX ADVANTAGE PLUS sold its future receivables to multiple third-parties in January 2022 and February 2022 -- and within a few months thereafter, Defendants demonstrated an inability or unwillingness to fulfill their contractual obligations to the party who purchased the receivables:

(a)    Plaintiff ROBERT CRABB would not have entered into the September 2022 $100,000.00 short-term loan with Defendants;

(b)    Plaintiff STEPHEN CRABB and Plaintiff ROBERT CRABB would each have immediately accelerated and demanded prompt payment in full of all outstanding balances due to Plaintiffs in or about October 2022, when INGRAM requested that they each forestall payment demands and not deposit any checks from RE/MAX ADVANTAGE PLUS for at least three months.

## DEFENDANTS ALSO WITHHELD FROM PLAINTIFFS THAT INGRAM SOLD HIS $3,000,000 MANSION IN BOCA RATON, FL IN APRIL 2023, PRESUMABLY TO AVOID HIS PAYMENT OBLIGATIONS

47.    Also unbeknownst to Plaintiffs, INGRAM has acted to evade his personal obligation as a guarantor of RE/MAX ADVANTAGE PLUS's debts by divesting himself of a lucrative asset that should have been used to compensate Plaintiffs for the sums owed to them by Defendants.

48.    According to records maintained by the Palm Beach County [FL] Appraiser's Office:

(a)    INGRAM lived at the residence in Boca Raton, Florida that Defendants have used as the registered business address for RE/MAX ADVANTAGE PLUS: 2560 NW 70th Boulevard, Boca Raton, Florida;

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

(b) INGRAM obtained a "Homestead Exemption" and an "Additional Homestead Exemption" on the residence in 2023, which he had not obtained in 2022 or in 2021;

(c) On or about April 24, 2023, INGRAM and his wife sold the residence to Leslie and Randall Woolley for Three Million Dollars ($3,000,000.00) -- nearly tripling the price INGRAM and his wife paid when they purchased the residence in June 2019.

49.    Pursuant to the December 2021 Note executed in favor of Plaintiff STEPHEN CRABB, INGRAM waived any right he had under a "Homestead Exemption" to protect his residence from financial obligations.

50.    Upon information and belief, INGRAM sold the $3,000,000.00 mansion in Boca Raton to liquidate its value and then conceal the proceeds from that sale, rather than expose the entire $3,000,000.00 value of the house to a creditor such as Plaintiffs to whom INGRAM owes payments that could be satisfied from the value of the residence.

51.    Rather than use any portion of the proceeds of the sale of the Boca Raton residence to satisfy his financial obligations to Plaintiffs, INGRAM has withheld those assets from Plaintiffs.

52.    Moreover, INGRAM represented to Plaintiffs at or about the time INGRAM sold the Boca Raton residence in April 2023 that INGRAM was meeting with an attorney to assist him in hiding assets to insulate him from a judgment if he (*i.e.*, INGRAM) were to be sued.

### PLAINTIFFS WERE MISLED INTO THEIR INVESTMENTS WITH RE/MAX ADVANTAGE PLUS

53.    As of the date of this filing, Defendants are holding Plaintiffs' funds and have prevented Plaintiffs from reclaiming those funds.

54.    Plaintiffs did not know, and through the exercise of reasonable diligence could not have discovered, the material factual misrepresentations and omissions of fact that were being perpetrated upon them by RE/MAX ADVANTAGE PLUS and INGRAM -- whether in their individual capacity(ies) or as a representative of RE/MAX ADVANTAGE PLUS.

SILVER MILLER
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

55.     INGRAM used his position of trust as a representative of RE/MAX ADVANTAGE

PLUS to induce Plaintiffs' investments and successfully conduct and conceal all of the misleading

activity perpetrated upon Plaintiffs in connection with their investments in RE/MAX ADVANTAGE

PLUS.

56.     As a result of the actions described above, Plaintiffs have suffered damages in an

amount that will be proven at trial.

57.     Plaintiffs duly performed all of their duties and obligations; and any conditions

precedent to Plaintiffs bringing this action have occurred, have been performed, or else have been

excused or waived.

58.     To enforce their rights, Plaintiffs have retained undersigned counsel and are obligated

to pay counsel a reasonable fee for its services.

## COUNT I – FRAUDULENT INDUCEMENT
### [AGAINST INGRAM and RE/MAX ADVANTAGE PLUS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 58 above, and further allege:

59.     INGRAM, by acts of both omission and commission, made false statements to

Plaintiffs concerning material facts about their investments.

60.     Specifically, INGRAM's representations to Plaintiffs that, among other things:

    (a) investing in RE/MAX ADVANTAGE PLUS would be profitable and
        prudent;

    (b) the pre-dated checks proffered by Defendants would be honored in full
        and on time in accordance with the parties' agreed-upon payment
        schedule; and

    (c) RE/MAX ADVANTAGE PLUS and INGRAM were each financially
        secure enough to satisfy their financial obligations to Plaintiffs

were false, and INGRAM knew at the time the statements were made to Plaintiffs that the statements

were false.

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

61.     INGRAM intended that Plaintiffs would be induced into action by relying upon the statements of fact he made to Plaintiffs.

62.     In the course of investing their funds with RE/MAX ADVANTAGE PLUS and entrusting the Defendants to properly handle their investments, Plaintiffs reasonably and justifiably relied on the statements of fact made to them by INGRAM.

63.     As a direct and proximate result of Plaintiffs' reliance on the statements made to them by INGRAM, Plaintiffs have suffered damage.

64.     As a direct and proximate result of INGRAM's wrongful actions, Plaintiffs have been damaged.

## COUNT II – RESCISSION OF CONTRACT(S)
## [AGAINST RE/MAX ADVANTAGE PLUS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 58 above, and further allege:

65.     The terms of investment in RE/MAX ADVANTAGE PLUS constitute contracts between: (1) Plaintiffs and (2) RE/MAX ADVANTAGE PLUS.

66.     As a result of fraud and false representations made to Plaintiffs in connection with their investments in RE/MAX ADVANTAGE PLUS, Plaintiffs state their demand that the contracts between them and RE/MAX ADVANTAGE PLUS be rescinded and canceled.

67.     To the extent that Plaintiffs have received from RE/MAX ADVANTAGE PLUS any legitimately derived benefits through the contracts, Plaintiffs hereby offer to restore those benefits once they are identified and can be quantified.

68.     As a direct and proximate cause of the above-described conduct, Plaintiffs have been damaged.

69.     RE/MAX ADVANTAGE PLUS is subject to liability because it is believed to control the assets invested by Plaintiffs, which must be disgorged and returned to Plaintiffs in effectuating the rescission of the contract into which they were unlawfully led.

- 12 -

Complaint for Damages and Equitable Relief

## COUNT III – BREACH OF CONTRACT(S)
### [AGAINST RE/MAX ADVANTAGE PLUS and INGRAM]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 58 above, and further allege:

70.     This cause of action is asserted as an alternative to the preceding cause of action that requests rescission of the contracts between Plaintiffs and RE/MAX ADVANTAGE PLUS.

71.     The terms of their investments in RE/MAX ADVANTAGE PLUS constitute contracts between: (1) Plaintiffs and (2) RE/MAX ADVANTAGE PLUS.

72.     The terms of the contracts impose upon RE/MAX ADVANTAGE PLUS numerous requirements, including a requirement that RE/MAX ADVANTAGE PLUS return to Plaintiffs the full amount of their investment principal plus a pre-determined measure of interest.

73.     RE/MAX ADVANTAGE PLUS has failed to fulfill all of its payment obligations under the contracts with Plaintiffs.

74.     Similarly, INGRAM -- who personally guaranteed RE/MAX ADVANTAGE PLUS's obligations under the contracts -- has failed to fulfill all of the payment obligations owed to Plaintiffs under the contracts.

75.     Plaintiffs gave fair consideration to RE/MAX ADVANTAGE PLUS, which was tendered for the right to receive the aforementioned investment returns.

76.     Additionally, Plaintiffs have fully performed their obligations under the contracts.

77.     Plaintiffs timely presented to Defendants a demand for payment, and Defendants failed to provide Plaintiffs the sums due and owing under the contracts.

78.     As a direct and proximate cause of the above-described breaches of the contracts, Plaintiffs have been damaged.

79.     To the extent RE/MAX ADVANTAGE PLUS is unable to satisfy its financial obligations under the contracts, INGRAM -- as a personal guarantor -- is liable to satisfy all such obligations.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

## COUNT IV – CONVERSION
## [AGAINST INGRAM and RE/MAX ADVANTAGE PLUS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 58 above, and further allege:

80.     Plaintiffs transferred funds to RE/MAX ADVANTAGE PLUS, acting by and through INGRAM, as loans to RE/MAX ADVANTAGE PLUS.

81.     RE/MAX ADVANTAGE PLUS and INGRAM have kept all or a portion of Plaintiffs' funds after Plaintiffs requested their return, despite RE/MAX ADVANTAGE PLUS and INGRAM's lack of any legitimate ownership interest in the assets.

82.     By refusing to return to Plaintiffs their assets, RE/MAX ADVANTAGE PLUS and INGRAM intended to interfere with, and indeed has interfered with, Plaintiffs' ownership and interest in those holdings and has deprived Plaintiffs of their property, permanently or temporarily.

83.     Upon information and belief, RE/MAX ADVANTAGE PLUS and INGRAM utilized all or a portion of Plaintiffs' funds to cover RE/MAX ADVANTAGE PLUS and INGRAM's own business expenses and to enrich INGRAM himself.

84.     As a result of RE/MAX ADVANTAGE PLUS and INGRAM's conversion of Plaintiffs' funds to their own corporate and personal uses, Plaintiffs have suffered damage.

## COUNT V – IMPOSITION OF A CONSTRUCTIVE TRUST
## AND DISGORGEMENT OF FUNDS
## [AGAINST RE/MAX ADVANTAGE PLUS]

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 - 58 above, and further allege:

85.     This is an action to impose a constructive trust upon the property taken from Plaintiffs that is currently held by RE/MAX ADVANTAGE PLUS. This action further calls for the restoration to Plaintiffs of that wrongfully obtained property.

86.     As set forth above, RE/MAX ADVANTAGE PLUS – through actual fraud, abuse of confidence, or other questionable means – have obtained Plaintiffs' investment funds, which in equity and good conscience they should no longer be permitted to hold.

- 14 -

Complaint for Damages and Equitable Relief

87.    The assets at issue are specific, identifiable property and can be traced in assets of RE/MAX ADVANTAGE PLUS.

88.    Any such assets currently held by RE/MAX ADVANTAGE PLUS must be disgorged to Plaintiffs' benefit, as RE/MAX ADVANTAGE PLUS is not entitled to the benefit of the wrongfully misappropriated and converted funds invested by Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray for relief as follows:

(a)    A judgment awarding Plaintiffs equitable restitution, including, without limitation, rescission of their investments in RE/MAX ADVANTAGE PLUS, restoration of the *status quo ante*, and return to Plaintiffs all investments funds taken from them (minus payments received by Plaintiffs) in connection with the RE/MAX ADVANTAGE PLUS investments;

(b)    An award of any and all additional damages recoverable under law including but not limited to actual damages, compensatory damages, punitive damages, incidental damages, and consequential damages;

(c)    An Order imposing upon RE/MAX ADVANTAGE PLUS a constructive trust over the funds and assets rightfully belonging to Plaintiffs;

(d)    Pre- and post-judgment interest;

(e)    Attorneys' fees, expenses, and the costs of this action; and

(f)    All other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

## RESERVATION OF RIGHTS

Plaintiffs reserve their right to further amend this Complaint, upon completion of their investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Complaint for Damages and Equitable Relief

Respectfully submitted,

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101
Coral Springs, Florida 33065
Telephone:    (954) 516-6000

By:   */s/ David C. Silver*
           DAVID C. SILVER
           Florida Bar No. 572764
           E-mail: DSilver@SilverMillerLaw.com
           JASON S. MILLER
           Florida Bar No. 072206
           E-mail: JMiller@SilverMillerLaw.com

           *Counsel for Plaintiffs*

Dated: __August 31, 2023_____

**SILVER MILLER**
4450 NW 126th Avenue - Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

# EXHIBIT "A"

 

PROMISSARY NOTE AND SCHEDULE

Boca Raton, FL
December 26, 2021

$200,000

FOR VALUE RECEIVED, the undersigned, promise(s) to pay to STEVE CRABB, or order, without offset, the principal sum of TWO HUNDRED THOUSAND AND 00/100 DOLLARS – ($200,000.00) plus a total interest of ONE HUNDRED THOUSAND AND 00/100 DOLLARS -($100,000.00)

The said principal shall be payable at his residence in Virginia Beach, VA or such other place as the holder may designate in writing, and shall be payable by check as follows:

Repayment of note shall be in full on or before May 26, 2023.

Payments shall be **$5,000.00** per month due by the 26th of each month starting January 26, 2022 until June 26, 2022. Payments starting July 26, 2022 shall be $25,000 until April 26, 2023. Final payment of $20,000 shall be due May 26, 2023. See payment schedule below;

| Date | Amount | Check # | Date | Amount | Check # |
|------|--------|---------|------|--------|---------|
| 1/26/2022 | $5,000 | 80067 | 2/26/2022 | $5,000 | 80068 |
| 3/26/2022 | $5,000 | 80069 | 4/26/2022 | $5,000 | 80070 |
| 5/26/2022 | $5,000 | 80071 | 6/26/2022 | $5,000 | 80072 |
| 7/26/2022 | $25,000 | 80073 | 8/26/2022 | $25,000 | 80074 |
| 9/26/2022 | $25,000 | 80075 | 10/26/2022 | $25,000 | 80076 |
| 11/26/2022 | $25,000 | 80077 | 12/26/2022 | $25,000 | 80078 |
| 1/26/2023 | $25,000 | 80079 | 2/26/2023 | $25,000 | 80080 |
| 3/26/2023 | $25,000 | 80081 | 4/26/2023 | $25,000 | 80082 |
| 5/26/2023 | $20,000 | 80083 | | | |

If default be made in the payment under this note, and if such default is not made good within 30 days after the due date of such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder(s) of this note.

Each person liable hereon in any capacity, whether as maker, endorser, surety, guarantor or otherwise, (i) waves homestead exemption, (ii) waives presentment, demand, protest, and notice of every kind respecting this note, (iii) agrees that holder, at any time or times without notice to or the

consent of them or any of them may grant extension, of time, without limit as to the number of the aggregate period of such extensions, for the payment of any principal or interest due upon, and (iv) to the extent not prohibited by law, waives the benefit of any law or rule of law intended for his advantage or protection as an obligor hereunder or providing for his release or discharge from liability hereon, in whole or in part, on account of any facts or circumstances other that full and complete payment of all amounts due hereunder.  Furthermore, each person liable hereon in any capacity also agrees to pay all fees and charges, and all costs, including reasonable attorney's fees.

The holder of the note may collect a "late charge" not to exceed Five Percent (5%) for each payment more than 10 days in arrears to cover the extra expense involved in handling delinquent payments.

This Note is secured by Jonathan Chadwick Ingram personally, and Associates of Boca Raton Inc. Dba RE/MAX Advantage Plus.

signatures and seals:

_____

Jonathan Chadwick Ingram for Associates of Boca Raton

Date: _12 - 26 - 2021_

_____

Jonathan Chadwick Ingram

Date: _12 - 26 - 2021_

_____

Steve Crabb

Date: _12-26-21_

Downtown - 601 S. Federal Hwy, Suite 100 • Boca Raton, FL 33432• Office: 561-394-7800• Fax: 561-394-7608
Boardwalk - 6905 SW. 18ᵗʰ St. • Boca Raton, FL 33433• Office: 561-447-7800• Fax: 561-447-7022
Boynton Beach - 7410 Boynton Beach Blvd. Suite A-1• Boynton Beach, FL 33437• Office: 561-737-0310• Fax: 561-737-3557
East Delray Beach - 900 E. Atlantic Ave, Suite 10• Delray Beach, FL 33483• Office: 561-279-7800• Fax: 561-737-3557
West Delray Beach - 15084 Lyons Road, Suite 650 • Delray Beach, FL 33446 • Office: 561-826-7800
Delray Community Center - 15065 S. State Road 7 • Delray Beach, FL 33446
Parkland - 6612 Parkside Drive • Parkland, FL 33067 • Office: 954-341-5000 • Fax: 954-341-5001
Each RE/MAX® office is independently owned and operated



*011500120*
03/08/2023
000006906217170

This is a LEGAL COPY of your
check. You can use it the same
way you would use the original
check.

01140153303062306z
011500120

*00080134* 4:063102152: 1000163221111* *0011500000*



ROBERT CRABB /STEPHEN CRABB
(757) 374-6957
90 RAYMOND RD
CHESTER NH 03036

1 LBS        1 OF 1
SHP WT: 1 LBS
DATE: 31 MAY 2024

SHIP FLAGLER WATERVIEW BUILDING
TO:  STE 801
     1515 N FLAGLER DR

WEST PALM BEACH  FL 33401-3431

FL 334 0-05



UPS GROUND

TRACKING #: 1Z A9Y 580 03 6553 3073



BILLING: P/P

REF #2: LILYH

ISH 13.00F ZZP 450 20.5U 05/2024